**John McCOLLUM, et al., Plaintiffs,**

**v.**

**William French SMITH, Attorney General of the United States, and Bradford Reynolds, Assistant Attorney General for the Civil Rights Division, United States Department of Justice, Defendants.**

**Civ. A. No. 83–2509.**

United States District Court,
District of Columbia.

Sept. 28, 1984.

---

**8.** And no longer contested by MarAd.

William H. Schaap, Washington, D.C., Frank E. Deale, New York City, for plaintiffs.

David J. Anderson, Barbara L. Gordon, U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

THOMAS F. HOGAN, District Judge.

In this suit, the eight individual plaintiffs and the National Anti-Klan Network seek a declaratory judgment that the Department of Justice for many years under the past as well as the present administration has improperly interpreted its jurisdiction to prosecute violations of certain criminal statutes. The defendants have moved to dismiss the complaint on the ground that plaintiffs lack standing. Upon consideration of defendants' motion, plaintiffs' opposition and defendants' reply memorandum, the supporting memoranda of points and authorities and the arguments presented at a hearing on this motion, it is hereby this 28th day of September, 1984

ORDERED that defendants' motion is GRANTED and the case dismissed.

The individual plaintiffs are residents of several Southern states; each alleges that he or she has been a victim of racially motivated violence by groups of Klansmen over the past several years. Each plaintiff alleges that FBI and Justice Department officials were informed of these incidents but that "on information and belief, the reason for the failure of the Department of Justice to act was the Department's legal position, taken under the direction of defendant Smith as Attorney General and defendant Reynolds as Assistant Attorney General in charge of the Civil Rights Division, that it does not have jurisdiction to prosecute those who commit violent acts even though motivated solely by race." Amended Complaint ¶¶ 10, 11. It is alleged in the complaint that this position was announced in 1980 in the testimony of Drew S. Days, the chief of the Criminal Section of the Civil Rights Division under President Carter.[1]

The National Anti-Klan Network is a non-profit corporation based in Atlanta, Georgia. It was established in 1979 in response to the rise in Klan activity throughout the United States. The Network consists of a number of religious, labor, educational, political and legal organizations and individuals, and works to counter Klan activity through educational forums, political organizing, and other legal means. Each of the individual plaintiffs belongs to the Network. The Network alleges that it has been at the forefront of the struggle to alert the defendants to the erroneous construction of certain statutory provisions, and to the fact that racially motivated violence has increased because of the defendants' unwillingness to prosecute these types of violent acts.

The statutes at issue are 18 U.S.C. §§ 241, 242 and 245. Section 245 enumerates certain federally protected activities, the interference with which may be punished pursuant to Sections 241 and 242. Section 241 authorizes the imposition of fines and a term of imprisonment where,

---

1. *See Increasing Violence Against Minorities: Hearing Before the Subcomm. on Crime of the* *House Comm. on the Judiciary,* 96th Cong., 2d Sess., 92–93, 98–100 (1980).

two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

(where) two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured ...

Section 242 provides,

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if death results shall be subject to imprisonment for any term of years or for life.

Plaintiffs further allege that defendants' erroneous construction of these statutes has resulted in a deprivation of plaintiffs' rights to be free from race discrimination and from the badges and incidents of slavery under the thirteenth amendment, and to be afforded equal protection of the laws under the fourteenth amendment. They also allege that the defendants' failure to enforce these statutes has deprived them of their rights to be protected from racial discrimination and racially motivated violence. Plaintiffs have asked the Court to declare that there is no jurisdictional obstacle preventing federal prosecutions, based on the statutes at issue, against the perpetrators of the racially motivated violent incidents alleged by the plaintiffs.

■ In ruling on the standing issue presented, the Court has accepted as true all material allegations in the complaint and has construed that complaint in favor of the plaintiffs. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The relevant inquiry when the issue of a plaintiff's standing is raised is "whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision." *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 41, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976). Further, in order to demonstrate injury in fact, a plaintiff must show that he has suffered a "distinct and palpable injury that is fairly traceable to defendant's challenged action." *Valley Force Christian College v. Americans United For Separation of Church and State, Inc.,* 454 U.S. 464, 487, 102 S.Ct. 752, 766, 70 L.Ed.2d 700 (1982). In analyzing the elements of injury in fact and redressability, this Circuit has explained,

[t]he fairly traceable causation inquiry is directed toward the connection between the injury and the defendant's actions. The redressability inquiry, on the other hand, focuses on the connection between the injury and the action requested of the court. The fairly traceable causation requirement is therefore generally based on past or present occurrences (the effect of the defendant's actions), while the redressability requirement is based on future probabilities (the effect of the court's decision). Of course, there is a correlation between the two elements. As the connection between the alleged injury and the defendant's actions becomes more direct, the likelihood that requiring the defendant to change his behavior will redress that injury increases.

*Community Nutrition Institute v. Block,* 698 F.2d 1239, 1245 (D.C.Cir.1983).

■ The Court agrees with defendants that the causal link between plaintiffs' injuries and defendants' interpretation of these statutes is speculative. The defendants' decision that they had no authority to prosecute under the particular facts of each plaintiff's case did not cause the injuries plaintiffs allege. Additionally, even con-

struing the complaint in plaintiffs' favor, the Court would be required to speculate as to whether plaintiffs will again be wronged in a similar manner as the result of defendants' decision not to prosecute the earlier incidents. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).[2] The Court does not doubt that plaintiffs have been injured; the appropriate inquiry is whether *these* defendants' actions have caused that injury. *Cf. Halkin v. Helms*, 690 F.2d 977, 999 n. 81 (D.C.Cir.1982). The Court can find no such causal link here.

■ The Court has an even greater concern with finding that plaintiffs satisfy the redressability prong of the standing inquiry. When a challenge is brought to a criminal statute, the general rule is that a private citizen lacks a judicially cognizable interest in whether another is or is not prosecuted. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973). In *Linda R.S.*, the mother of an illegitimate child sought a declaratory judgment that a Texas statute making it a crime for a parent not to support his children violated the equal protection clause where the state had construed the statute as applying only to married parents. The Court found that plaintiff did not have standing to challenge the statute. According to the Court, she had failed to show the nexus between her injury and the relief she asked the court to award her. The Court reasoned,

> Thus if appellant were granted the requested relief, it would result only in the jailing of the child's father. The prospect that prosecution will, at least in the

future, result in payment of support can, at best, be termed only speculative.

*Id.* at 617, 93 S.Ct. at 1148.

The Supreme Court has more recently discussed this factor in *Leeke v. Timmerman*, 454 U.S. 83, 102 S.Ct. 69, 70 L.Ed.2d 65 (1981). There, prison inmates claimed that during a prison uprising they were unnecessarily beaten by prison guards and were also deprived of their constitutional right of access to the courts. An investigation into the incident demonstrated that the guards had beaten the inmates. When this information was presented to the magistrate in an affidavit, he declared his intention to issue an arrest warrant. The prosecuting authorities then decided to undertake another investigation rather than arrest the guards. The Court found the case indistinguishable from *Linda R.S.* and stated,

> [e]ven without the prosecutor's acts, there is no guarantee that issuance of the arrest warrant would remedy claimed past misconduct of the guards or prevent future misconduct.

*Id.* 102 S.Ct. at 70. *Cf. Dohaish v. Tooley*, 670 F.2d 934 (10th Cir.1982) (father could not sue prosecutor to compel prosecution of his son's alleged murderer).

■ Because an individual does not have a protected interest in assuring that another is prosecuted, any injury inflicted by the perpetrator is not likely to be redressed by a court's declaration that the government may prosecute. Furthermore, because the decision to prosecute involves consideration of numerous factors, even if this Court were to hold that the Justice Department had the jurisdiction, this would not result in the defendants' adoption of a

---

**2.** Plaintiffs attempt to bolster the causation element by asserting that the 1980 testimony of Mr. Days reflected a modified, or at least a newly publicized, interpretation of the statutes, and that this "new" Department position had an effect on the behavior of the Klan and others. The historical record however belies the argument that the Department's interpretation is of recent vintage. As early as 1947, a presidential committee noted that "[t]he most serious difficulty which the Civil Rights Section [of the Justice Department] has encountered in using

these sections [18 U.S.C. §§ 241 and 242] has been to determine the civil rights they protect. Presumably, the two laws protect any and all rights established by the Constitution or by federal statute. But the Constitution nowhere lists personal rights ... nor does any federal statute enumerate them." To Secure These Rights: The Report of the President's Committee on Civil Rights, 117 (1947). This interpretation of the statutes corresponds closely to that given by Mr. Days at the 1980 hearing.

decision to prosecute these particular cases much less create a blanket policy of prosecuting every such case.[3] Since the Court finds that plaintiffs have failed to demonstrate that they have been injured in fact by defendants' statutory construction and that the requested declaratory relief would redress the injuries they have sustained, the Court concludes that plaintiffs lack standing to bring this suit. Accordingly, the case will be dismissed.[4]

---

**3.** For this reason the Court is not persuaded by the dicta of *Nader v. Saxbe,* 497 F.2d 676 (D.C. Cir.1974). There this Circuit suggested that, "one injured by a general noncompliance ... might have standing to challenge the deficient enforcement policy." *Id.* at 681 n. 27. The Court also finds distinguishable the case of *NAACP v. Levi,* 418 F.Supp. 1109 (D.D.C.1976), *dismissed* 76 F.R.D. 134 (D.D.C.1977), since that case did not involve a suit by the victim of a crime challenging the construction of a federal criminal statute, and did not address the jurisdictional reach of Sections 241, 242 or 245. The Court in *Levi* was not faced with the issue of

whether defendants' conduct in the interpretation of a particular criminal statute actually resulted in the crime perpetrated upon the victim and did not have to speculate as to whether a different construction of the statute would prevent that crime in the future.

**4.** This decision should not be construed as any type of a victory for those individuals or organizations, abhorrent to our society, who are alleged to have inflicted the serious injuries claimed by the plaintiffs.